## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **KEITH STODDARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 13-889 (RMC)** |
| | ) | |
| **DAVID WYNN,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Keith Stoddard was arrested and detained for longer than he should have been on a warrant issued by the United States Parole Commission (USPC).  He maintains this suit against a USPC case analyst for violating Mr. Stoddard's Fifth Amendment right to due process of law.  However, the Defendant enjoys absolute immunity because his job is quasi-judicial in nature.  The Court will grant Defendant's motion to dismiss.

### I.  FACTS

The well-pleaded facts alleged in the operative complaint must be taken as true in this procedural posture.  *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).  Because Mr. Stoddard is pro se, the Court must also consider allegations in his opposition memorandum.  *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).  The "operative complaint" in this case is best viewed as a combination of Mr. Stoddard's Complaint, Dkt. 1, and his Amended Complaint, Dkt. 42.  The latter is more supplementary than superseding; it adds "John Doe" defendant(s) but does not restate the core of Mr. Stoddard's allegations, which remain only in the original Complaint.

On March 24, 2011, Mr. Stoddard was arrested in Virginia and charged with driving while intoxicated.  Mot., Ex. A-11 [Dkt. 46-1 at 52] (Virginia charging documents).[1]  At the time, Mr. Stoddard was on parole from a 1990 conviction for attempted sodomy/assault (D.C. Superior Court Case No. F13588-89) and for assault with intent to commit rape (Case No. F6657-89).  *See* Mot., Ex. A-1 [Dkt. 46-1 at 7-8] (Presentence Report, Judgment & Commitment Orders).

On April 4, 2011, USPC issued a warrant charging Mr. Stoddard with again violating his parole.[2]  Mot., Ex. A-12 [Dkt. 46-1 at 56] (4/4/2011 Warrant Application). Defendant Jequan Jackson, then a case analyst at USPC, prepared the warrant and an accompanying memorandum, Mot., Ex. A-14 [Dkt. 46-1 at 64] (4/4/2011 Memorandum).  Mr. Jackson recommended holding the warrant in abeyance "because the Commission desires that the parolee continue to be supervised, pending the outcome of the criminal proceedings, if the parolee is released to the community on bail or personal recognizance."  *Id.* at 1.

On April 15, 2011, Ms. Ai Van Phan, then a Community Supervision Officer at USPC, sent Mr. Jackson an Amended Alleged Violations Report.  Opp'n, Ex. 1 [Dkt. 19-2 at 1]

---

[1] The Court takes judicial notice of this and other public court documents.  *United States v. Project on Gov't Oversight*, 766 F.3d 9, 9 (D.C. Cir. 2014) (per curiam) (citing *Veg–Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987)).

[2] Mr. Stoddard's experience with parole revocation is extensive.  Just two days prior to his arrest, the USPC had terminated revocation proceedings against Mr. Stoddard for allegedly using drugs, refusing to submit to drug tests, failing to report to Saturday sanctions groups, and for failing to report to his supervising officer.  *See* Mot. at 4 & Ex. A-8 [Dkt. 46-1 at 38] (Parole Violation Warrant); Ex. A-9 [Dkt. 46-1 at 43] (3/18/2011 Probable Cause Hr'g Digest) (finding probable cause but nonetheless reinstating parole).  Since being released on June 16, 2000, Mr. Stoddard's parole had been revoked three times.  *See* Mot. at 3-4 & Exs. A-3 [Dkt. 46-1 at 19] (1/4/2002 Notice of Action), A-4 [Dkt. 46-1 at 23] (10/12/2004 Notice of Action), and A-5 [Dkt. 46-1 at 28] (1/31/2009 Notice of Action).  Each time he was returned to prison, and each time he was paroled again.

(4/15/2011 Report). Ms. Phan recommended that an expedited warrant issue for Mr. Stoddard's

arrest. *Id.* at 1. The Report noted Mr. Stoddard's DWI arrest, but recommended his arrest for

two other, unrelated parole violations: (1) illegal use of a controlled substance, to wit, testing

positive for cocaine on April 1 and April 8, 2011; and (2) failure to obtain employment. *Id.* at 2.

On April 22, 2011, Mr. Stoddard surrendered himself for arrest. Compl. at 3.

Importantly for present purposes, he was arrested under the April 4 warrant (for DWI in

Virginia) and not for anything alleged in the April 15 Report. *See* Mot., Ex. A-13 [Dkt. 46-1 at

59] (Warrant, U.S. Marshal's Return to USPC) (showing Mr. Stoddard's signature on April 25,

2011 and referencing a "warrant application *dated April 4, 2011*") (emphasis added).

From the D.C. jail, Mr. Stoddard sought assistance from the Public Defender

Service (PDS). Ms. Parisa Dehghani-Tafti, then a staff attorney at PDS, wrote an email to an

address at USPC for urgent communications: USPC_Urgent@usdoj.gov. Mot., Ex. A-17 [Dkt.

46-1 at 73] (5/24/2011 Email).[3] The email was forwarded to Defendant David Wynn at USPC.

Mr. Wynn in turn forwarded the email to Mr. Jackson. Mot., Ex. A-18 [Dkt. 46-1 at 75]

(5/26/2011 Email). Mr. Stoddard alleges not only that this request "fell upon deaf ears," but that

Mr. Jackson "sought to remove or significantly alter [a] protected status by ignoring urgent

communication from [his] colleague to cure the due process violations." Compl. at 4.

On June 6, 2011, Mr. Stoddard petitioned for a writ of habeas corpus. *See*

Petition [Dkt. 1], *Stoddard v. U.S. Parole Comm'n*, No. 11-cv-1050 (A. Jackson, J.). Judge

---

[3] Although attached to Defendants' motion, this email was cited and quoted by Mr. Stoddard,
Compl. at 3. The Court may therefore consider it when analyzing Defendants' motion to
dismiss. "A district court may consider a document that a complaint specifically references
without converting the motion into one for summary judgment." *Banneker Ventures, LLC v.
Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (citing *Kaempe v. Myers*, 367 F.3d 958, 965
(D.C. Cir. 2004); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1327 (4th ed. 2014); Fed. R. Civ. P. 12(d)).

Jackson would ultimately dismiss the case as moot on December 14, 2011, because Mr. Stoddard had already been released.  *See* Order [Dkt. 16], *Stoddard v. U.S. Parole Comm'n*, No. 11-cv-1050 (Dec. 14, 2011).

On June 30, 2011, Defendant Jackson drafted a memorandum with the following recommendation: "Release forthwith from the custody of the warrant dated 4/4/2011 and close case."  Mot., Ex. A-19 [Dkt. 46-1 at 78] (6/30/2011 Memorandum) at 1.  That recommendation was accepted by signature one week later.  *Id.* at 3.  USPC issued a notice of action on July 6, 2011 ordering Mr. Stoddard's immediate release.  Mot., Ex. A-23 [Dkt. 46-1 at 93].

Defendant Jackson's recommendation came one day late for Mr. Stoddard. Having been arrested on April 25, 2011, Mr. Stoddard was owed a combined probable cause and local revocation hearing no later than June 29, 2011.  *See* 28 C.F.R. § 2.101 (requiring such a hearing within 65 days).[4]

Mr. Stoddard sued USPC, its Chairman, and the current Defendants.  *See* Compl., Dkt. 1, *Stoddard v. USPC*, No. 12-cv-857 (Boasberg, J.) (May 25, 2012).  Defendants Jackson and Wynn were never served in that action.  Judge Boasberg dismissed Mr. Stoddard's claims and admonished him to serve Messrs. Jackson and Wynn under the Federal Rules of Civil Procedure.  *See* Mem. Op. at 2, Dkt. 22, *Stoddard v. USPC*, No. 12-cv-857 (Boasberg, J.) (Oct. 26, 2012).  That led Mr. Stoddard to file the instant suit on June 13, 2013, naming only the current Defendants in their individual capacities.  *See* Compl. [Dkt. 1].

In a previous opinion, this Court narrowed the issues in the case.  *Stoddard v. Wynn*, 68 F. Supp. 3d 104 (D.D.C. 2014).  Mr. Stoddard's claims under *Bivens v. Six Unknown*

---

[4] Mr. Stoddard believes that his arrest date is April 22, not April 25.  If that were the case, then Mr. Jackson's recommendation would have been four days late instead of one.  Either way, the regulation would have been violated.

*Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) were dismissed because Defendants were acting under color of D.C. law for these purposes. *Stoddard*, 68 F. Supp. 3d at 112-13. The Court held that Mr. Stoddard could proceed under 42 U.S.C. § 1983 and that he had adequately stated a claim for a Fifth Amendment violation. *Id.* at 113. The Court denied without prejudice Defendants' claim of qualified immunity because "the record lacks sufficient material facts regarding Defendants' actions and/or omissions with regard to Mr. Stoddard's erroneous detention." *Id.* at 114. Mr. Stoddard's attempt to resurrect his allegation of false imprisonment, previously denied by Judge Boasberg, was also denied. *Id.* at 115.

The Court did not address, because Defendants did not raise, any claim to absolute immunity. *See generally id.*; Mot. to Dismiss [Dkt. 17] at 6 ("Without waiving the 'absolute Immunity' defense for defendants in a future filing should one be necessary, the defense of 'qualified Immunity' for Wynn and Jackson is invoked here to defeat Plaintiff's constitutional claims in their entirety."). While qualified immunity turns on the objective reasonableness of a defendant's actions, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) and is thus often fact- and context-specific, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), absolute immunity demands a more "limited factual inquiry." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1142 (D.C. Cir. 2015).

After Mr. Stoddard filed an amended complaint on April 28, 2015, Defendants brought a renewed motion to dismiss on June 26, 2015.[5] They invoked absolute and qualified immunity and, alternatively, argued that Mr. Stoddard fails to state a claim for a Fifth Amendment violation. Am. Compl. [Dkt. 42]; Mot. to Dismiss [Dkt. 46] (Mot.).

---

[5] The motion was timely because Defendants' deadline was extended by minute order on June 10, 2015.

In his opposition memorandum, Mr. Stoddard abandoned any claim against Defendant Wynn, Opp'n to Mot. [Dkt. 49] (Opp'n) at 1, who was dismissed.  *See* Order [Dkt. 55].  The Court proceeds to the merits of Defendant Jackson's motion to dismiss.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).  A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  *Id*. at 570.  A court must treat the complaint's factual allegations as true, "even if doubtful in fact."  *Id.* at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

A motion to dismiss is an appropriate vehicle to assert a claim of absolute immunity.  *Hyatt v. Town of Lake Lure*, 225 F. Supp. 2d 647, 656 (W.D.N.C. 2002) ("[R]uling on such issues may be appropriate on a motion to dismiss pursuant to Rule 12(b)(6), where the issue presented is purely a legal determination based on the facts alleged in the complaint.") (citing *Barnes v. Winchell*, 105 F.3d 1111, 1114–16 (6th Cir.1997)); *see also Imbler v.*

*Pachtman*, 424 U.S. 409, 416 (1976) (affirming dismissal under Rule 12(b)(6) due to prosecutorial immunity).  That is because "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  *Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir. 1993) (quoting *Imbler*, 424 U.S. at 419 n.13 (1975)).  "Thus, if the prosecutors and parole board members are entitled to absolute immunity, dismissal on Rule 12(b)(6) grounds [is] proper."  *Patterson*, 999 F.2d at 1237.

Although absolute immunity can be resolved through a motion to dismiss, courts may, where appropriate, conduct a limited evidentiary analysis focusing on the nature and scope of the job duties in question.  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1142 (D.C. Cir. 2015).  The "functional analysis governing absolute immunity" may call for a "limited factual inquiry" to determine "in what role the challenged function was exercised" and "preclud[e] on occasion disposition at the Rule 12 stage."  *Id.* (quoting *Gray v. Bell*, 712 F.2d 490, 496 (D.C. Cir. 1983) (internal quotation marks omitted)).

In this case, the Court has all the necessary facts from Mr. Stoddard's complaint and his opposition memorandum.  Although Defendants move to dismiss or, in the alternative, for summary judgment, the Court will resolve the case under Rule 12(b)(6).

### III.  ANALYSIS

U.S. Parole Commissioners and certain of their employees enjoy absolute immunity from liability when they perform quasi-judicial functions.  The Court concludes that Mr. Jackson was performing such functions here.

#### A.  The U.S. Parole Commission and Absolute Immunity

It is well established that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."  *Victory v. Pataki*, -- F.3d --, No. 13-3592,

2016 WL 373869, at *12 (2d Cir. Feb. 1, 2016), *as amended* (Feb. 24, 2016) (quoting *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)).  "Parole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature."  *Scotto v. Almena*, 143 F.3d 105, 111-13 (2d Cir. 1998).

Courts in this district have repeatedly held that U.S. Parole Commissioners enjoy absolute immunity.  *See, e.g.*, *Way v. Johnson*, 893 F. Supp 2d 15, 22 (D.D.C. 2012); *Jones v. Fulwood*, 860 F. Supp. 2d 16, 22 (D.D.C. 2012); *Pate v. United States*, 277 F. Supp. 2d 1, 8 (D.D.C. 2003).  The same goes for certain members of their staff.  *E.g.*, *Reynolds El v. Husk*, 273 F. Supp. 2d 11, 13 (D.D.C. 2002) (determining that a Parole Commission hearing examiner was absolutely immune from suit for damages arising from the Commission's decision to deny a prisoner parole).

The question is whether Defendant Jackson was acting within a quasi-judicial role when he took the actions alleged here.

**B.  Defendant Jackson**

Jequan Jackson was a "case analyst" at USPC at the relevant time.  Compl. at 3. He is accused of "knowing[ly] and intentionally violat[ing] the United States Constitution" *vis-à-vis* Mr. Stoddard by "fail[ing] to schedule a probabl[e] cause hearing [and giving Mr. Stoddard] an opportunity to be heard on the amended allegations."  Opp'n at 4.

In a remarkably similar case, another court in this district dismissed such claims on absolute-immunity grounds.  *See Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199 (D.D.C. 2011) (Howell, J.).  Mr. Mowatt sued Rhonda Moore, a case analyst at USPC, in her individual capacity for allegedly violating Mr. Mowatt's "Fifth Amendment right against

8

deprivation of liberty without due process by imprisoning him on the execution of the parole-violation warrant without holding a timely revocation hearing." *Id.* at 203. That is exactly the claim here. Judge Howell applied a three-part test for absolute immunity under *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (collecting cases) and concluded that Ms. Moore was absolutely immune from suit. *Mowatt*, 815 F. Supp. 2d at 206.

Mr. Jackson qualifies for absolute immunity under the same three-part test. First, his job functions are comparable to those of a judge. *Wagshal*, 28 F.3d at 1252. Case analysts "render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake." *Mowatt*, 815 F. Supp. 2d at 206 (quoting *Pate v. United States*, 277 F. Supp. 2d 1, 8 (D.D.C. 2003); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)). Second, controversies about parole are intense enough that future harassment or intimidation by litigants is a realistic prospect. *Wagshal*, 28 F.3d at 1252. Case analysts and judges "face the same risk of constant unfounded suits by those disappointed by the parole board's decisions." *Mowatt*, 815 F. Supp. 2d at 206 (quoting *Pate*, 277 F. Supp. 2d at 8; *Sellars*, 641 F.2d at 1303).[6] Third, the system contains safeguards that justify dispensing with private damage suits to control unconstitutional conduct. *Wagshal*, 28 F.3d at 1252. It is true here, as it was in *Mowatt*, that "a person in custody may sue for a writ of mandamus if held without a timely parole revocation hearing, such that suits for damages are unnecessary to control unconstitutional conduct." 815 F.

---

[6] Mr. Stoddard's opposition memorandum itself triggers this concern. He calls the April 15, 2011 Amended Violation Report a "madcap report" and "an act of desperation to incarcerate Plaintiff by an overzealous [CSO]." Opp'n at 3. After spending more than two pages rebutting the report, the accuracy of which is irrelevant to this case, Mr. Stoddard attacks Ms. Phan personally. Mr. Stoddard suggests that she "blatantly lies" and even that "Pre-Deportation proceedings should be considered as a viable option for [Ms.] Phan" because "she demonstrates characteristics of someone who has over stayed their visa." *Id.* at 5, 3. Mr. Stoddard contends, without evidence, that Ms. Phan's "jaded perspective is a direct result of her limited time in the United States and thus has put a strain on her American experience." *Id.* at 3.

Supp. 2d at 206 (citing *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983)).  As noted above, Mr. Stoddard petitioned for a writ of habeas corpus in this case.

One fact arguably distinguishes this case from *Mowatt* and others like it.  Mr. Stoddard alleges that Mr. Jackson acted willfully and with "malice [a]forethought."  Opp'n at 8.  Mr. Stoddard depicts a "wicked plan" in which Mr. Jackson was "hell-bent on keeping Plaintiff incarcerated" and acted as "puppet master pulling all the strings that held Plaintiff in lawful custody."  Opp'n at 11, 8, 9.  It does not appear that such deviousness was alleged in *Mowatt*.  Nevertheless, the dramatic nature of Mr. Stoddard's allegations do not defeat absolute immunity.  *See Simon v. Bickell*, 737 F. Supp. 2d 10, 16 n.7 (D.D.C. 2010) ( "absolute immunity attaches 'even where the plaintiff's allegations impute 'malicious or dishonest' conduct'") (quoting *Ruiz Rivera v. Holder*, 666 F. Supp. 2d 82, 94–95 (D.D.C. 2009)), *aff'd*, No. 10-5313, 2011 WL 1770138 (D.C. Cir. Apr. 22, 2011); *see also Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976) ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.  But the alternative of qualifying [absolute] immunity would disserve the broader public interest.").  Mr. Stoddard's only counterargument, that "Defendant Jackson is not worthy of this protection," Opp'n at 19, falls short even as liberally construed.

## IV.  CONCLUSION

It is no small thing to incarcerate a prisoner longer than necessary.  Mr. Stoddard has every right to be angry that he did not get a timely probable cause hearing.  However, the remaining Defendant in this case enjoys absolute immunity from liability for having performed his quasi-judicial functions as a case analyst at USPC.  The Court will grant Defendant's motion, Dkt. 46, and dismiss the case.  Mr. Richardson's motion to file a supplemental opposition, Dkt.

51, will be granted; the Court considered the supplemental opposition along with all other filings.

Mr. Stoddard's motion for a hearing, Dkt. 52, will be denied.

A memorializing Order accompanies this Opinion.


Date: March 10, 2016                                        _____/s/_____
                                                                            ROSEMARY M. COLLYER
                                                                            United States District Judge